UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TRACY LEE KRUPPENBACKER,

                       Plaintiff,    **No. 6:17-cv-06068-MAT**
                                                             **DECISION AND ORDER**
        -vs-

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                       Defendant.

---

**I. Introduction**

Represented by counsel, Tracy Lee Kruppenbacker ("Plaintiff") instituted this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

**II. Procedural Status**

On October 18, 2013, Plaintiff protectively filed an application for SSI, alleging disability beginning May 3, 2011. Her application was initially denied on December 31, 2013, and she timely filed a written request for a hearing. On June 11, 2015, administrative law judge James G. Myles ("the ALJ") conducted a videoconference hearing at which Plaintiff appeared without representation and testified. Plaintiff's husband, Donald Kruppenbacker, Jr., also testified on her behalf. The ALJ called

impartial vocational expert David Van Winkle ("the VE") to testify at the hearing. The ALJ issued an unfavorable decision on July 16, 2015. (T.11-27). On December 7, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision final decision of the Commissioner. Plaintiff then timely commenced this action.

Plaintiff and Defendant have cross-moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Court will discuss the record evidence further below, as necessary to the resolution of the parties' contentions. For the reasons set forth herein, the Commissioner's decision is affirmed.

**III. The ALJ's Decision**

At step one of the sequential evaluation, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 18, 2013, the application date.

At step two, the ALJ determined that Plaintiff has the following "severe" impairments: a history of supraventricular tachycardia ("SVT") and degenerative disc disease.

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ gave particular consideration to Listings 1.02 (major dysfunction of a joint),

1.04 (disorders of the spine), and 4.04 (ischemic heart disease). (T.18).

The ALJ then assessed Plaintiff as having the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 416.967(a), except that she can only occasionally crouch, balance, stoop, climb, kneel, and crawl; should avoid ladders, ropes, and scaffolds; can frequently, but not continuously, perform reaching, handling, and fingering; should avoid concentrated exposure to workplace hazards; can have occasional interpersonal contact in the workplace, but should not work as part of a team or have more than superficial contact with the public; and is limited to routine, unskilled work. (T.18).

The ALJ did not make a finding about Plaintiff's capacity for past relevant work. The ALJ noted that because the Medical-Vocational Guidelines direct a finding of "not disabled" based on Plaintiff's age (a younger individual, aged 41 on the application date), education (high school graduate), and RFC, there is nothing to suggest that she is unable to adjust to other work. (T.22).

At step five, the ALJ relied on the VE's testimony that an individual with Plaintiff's age, education, work experience, and RFC can perform the requirements of representative occupations such as (1) assembler (DOT 713.687-018; sedentary exertion, SVP of 2), of which there are 20,000 jobs in the national economy; (2) sorter (DOT 521.687-086, sedentary exertion, SVP of 2), of which there are

26,000 jobs in the national economy; and (3) inspector (DOT 726.684-050, sedentary exertion, SVP of 2), of which there are 16,000 jobs in the national economy. The ALJ accordingly entered a finding of not disabled.

**IV. Scope of Review**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g). The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive[.]" Id. "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citation omitted).

**V. Discussion**

   **A. Failure to Inform Plaintiff of her Rights (Pl's Br.,[1] Point I, pp. 16-21, 23)**

---

[1] Citations to "Pl's Br." refer to Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt #11-1).

-4-

Plaintiff argues that the ALJ erred by failing to inform her of her right to representation and to cross-examine the vocational expert. Relatedly, Plaintiff contends that the ALJ's hypothetical questions to the VE did not adequately reflect her limitations. The Commissioner argues that these assertions are belied by the record.

**1. Right to Representation**

"Although a claimant for SSI disability benefits is entitled to be represented by counsel if he so desires, the [Commissioner] is under no obligation to furnish such counsel." Hankerson v. Harris, 636 F.2d 893, 895 (2d Cir. 1980). "If, however, the claimant does appear pro se, the ALJ has a 'duty . . . to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts. . . .'" Id. (quotation and citation omitted; ellipses in original).

The record establishes that prior to the hearing, the ALJ notified Plaintiff several times that she had the right to have a representative. (See T.67, 71, 77-78, 80-84, 103). At the beginning of the hearing, the ALJ engaged Plaintiff in the following colloquy:

> ALJ: But I just need to discuss with you that you understand that you do have a right to a representative but you want to go ahead and proceed today without one, is that correct?
> CLMT: Yes, it is.

(T.32). Additionally, Plaintiff signed a waiver of representation at the hearing acknowledging that she has "been advised of [her] right to be represented at this hearing by an attorney or other

-5-

qualified person" and that she "hereby waive[s] [her] right to representation and choose[s] to proceed without a representative." (T.27). The Court finds that the ALJ ensured that Plaintiff was fully aware of her right to have counsel, and she knowingly, voluntarily, and intelligently waived her right to have a representative at the hearing.

### 2. Right to Cross-Examine the Vocational Expert

The Commissioner's regulations provide that at the administrative hearing, "[the claimant] may appear in person, by video teleconferencing, or, under certain extraordinary circumstances, by telephone. [The claimant] may submit new evidence, examine the evidence used in making the determination or decision under review, and present and question witnesses." 20 C.F.R. § 416.1429 (eff. July 25, 2014, to Jan. 16, 2017). The Second Circuit has "recognized the importance of providing a claimant the opportunity to subpoena and cross-examine experts submitting reports adverse to his claim." Alvarez v. Bowen, 704 F. Supp. 49, 54 (S.D.N.Y. 1989) (citing Fernandez v. Schweiker, 650 F.2d 5, 8-9 (2d Cir. 1981) (ALJ improperly relied on the report of one of the examining psychiatrists without having called him to testify at the hearing or informing claimant, who was not represented, of her right to do so and without having made further inquiry respecting the claimant's testimony that the doctor had made an inadequate examination and was mistaken in factual and opinion matters); Gullo v. Califano, 609 F.2d 649, 650 (2d Cir.

1979) (claimant was ordered by ALJ to submit to examination following hearing on her claim, but claimant was never given opportunity to examine or challenge the physician's report finding her capable of limited work activity; where ALJ placed substantial reliance upon the report, due process was denied to claimant)). Where a claimant proceeds pro se and the ALJ fails to adequately develop the record or accurately depict the claimant's limitations, courts in this Circuit have found that the failure to remind the claimant of her right to question witnesses constitutes reversible error. See, e.g., Cullinane v. Sec'y of Health & Human Servs., 728 F.2d 137, 139 (2d Cir. 1984) ("[T]he ALJ neglected to instruct the appellant that she had the right to subpoena and cross-examine a treating physician whose documentary evidence had been called into question. As a result, the evidence concerning the 'quality and trustworthiness' of the challenged oral surgeon was never sufficiently developed.") (citation omitted); Alvarez, 704 F. Supp. at 53–54 ("The ALJ did not meet his duty to develop the record vigorously in this case. The ALJ's failure to inform Mr. Alvarez that he had a right to cross-examine adverse witnesses was compounded by the ALJ's inadequate questioning of Dr. Barash, a board-certified psychiatrist, and Ms. Nieves, a vocational expert. . . ."); Rodriguez v. Apfel, No. 96-1132, 1997 WL 691428, at *6 (S.D.N.Y. Nov. 4, 1997) ("In light of the incomplete state of the record, the ALJ should have called Rodriguez's physicians to further develop the case. At the very least, the ALJ should have

informed Rodriguez[, who was pro se,] of his rights to subpoena and cross-examine witnesses.") (citations omitted).

In this case, at the beginning of the hearing, the ALJ described the hearing process and noted it was informal. (T.32-33). After ascertaining that Plaintiff had no questions before getting started, the ALJ explained the role of the VE as follows:

> ALJ: . . . . Then we'll get some testimony from our vocational expert, and it'll just be about work that you've done before, and *I'll give him a couple hypothetical questions, and then we'll talk about where we go from here*. And again, if you ever have any questions for me or Mr. Van Winkle[, the VE] or anything, you just don't hesitate to ask, okay?
> CLMT: Okay.
> WTN[2]: Okay.

(T.35) (emphasis supplied).

Later in the hearing, the ALJ asked the VE to consider a hypothetical individual, the same age as Plaintiff and having the same education and work experience as Plaintiff, who was limited to sedentary work and could never climb ladders, ropes, or scaffolds; occasionally perform other postural activities; frequently reach, handle, and finger; and tolerate no concentrated exposure to hazards. (T.48). This individual was also limited to unskilled work with only superficial interpersonal contact, no teamwork, and no more than superficial public contact. (T.48). In response, the VE testified that this individual could perform the sedentary unskilled jobs of assembler, sorter, and inspector. (T.48-50).

---

[2] "WTN" refers to Plaintiff's husband.

The ALJ then explained that the purpose of the VE's testimony was to help him "figure out, well, what can you still do even with your medical issues. And I just gave him one sample [sic] and again, that's my - - you know, I'm not at that final decision yet." (T.49-50). At that point, the ALJ asked Plaintiff, "So do you have any questions about *anything that we've done so far*[?]" (T.49-50) (emphasis supplied). Plaintiff replied, "[w]ell, the stuff that [the VE]'s saying, with the hypothetical that you gave him . . . I can't do any of - - any of those jobs." (T.50). Plaintiff elaborated that she "sat for a little bit" as a manager and assistant manager, but she still was "up and down." (T.51). The ALJ did not pose any questions to the VE based on the foregoing limitations articulated by Plaintiff, and the VE did not offer any commentary based on this testimony. The ALJ simply reiterated that he had not "made a final decision" but implied that she was not disabled:

> ALJ: . . . . [Y]ou know, under the regulations, if you can do just sit-down type of work, you know, 10 pounds - -
> CLMT: But - -
> ALJ: - - at your age and vocational factors, generally - -
> CLMT: And that's pushing it. 10 pounds is - - 10 pounds is pushing it.
> WTN: There's no way she could sit for eight hours.
> CLMT: I can't. I mean, just sitting to come to see you, I was up and down the whole time we were hear [sic]. I mean, right now - -
> WTN: (INAUDIBLE).
> CLMT: - - my - - I'm starting to get antsy where I have to get up and walk around because it's starting to bug me.

> ALJ: Okay. And that's fine, but what I'd ask you to do is when we're done here [is sign a medical records release form] . . . .

(T.51-52). The ALJ concluded the hearing soon thereafter.

The Commissioner argues that the ALJ discharged his duty to inform Plaintiff of her right to "question witnesses[,]" 20 C.F.R. § 416.1429, by telling her, at the beginning of the hearing, that "if you ever have any questions for me or Mr. Van Winkle or anything, you just don't hesitate to ask, okay[.]" (T.32). While the applicable regulation refers to the right to "question witnesses," the Second Circuit and district courts within it have consistently referred to the right as the one of cross-examination. This is because vocational experts and other experts generally are witnesses called *on behalf of* the Commissioner and, as such, are adverse witnesses vis-à-vis the claimants. See Alvarez, 704 F. Supp. at 53 ("The record demonstrates that the ALJ introduced [medical expert] Dr. Barash and [vocational expert] Ms. Nivens in a manner which misleadingly implied that they were not adverse witnesses, when in fact the testimony of both witnesses led the ALJ to deny Mr. Alvarez's claim for benefits. . . . By introducing the witnesses this way, the ALJ masked the fact that their testimony could be extremely damaging to Mr. Alvarez's claim, and gave no indication that their testimony could be challenged by anyone."). Here, the ALJ referred to the VE as "our vocational expert" which did not explain that he was an adverse witness; nor did the ALJ inform Plaintiff that the VE's testimony could be challenged. The

ALJ's comment to Plaintiff that she should feel free to ask questions of him or the VE "at any time" did not convey the crucial purpose underlying cross-examination, "the principal means by which the believability of a witness and the truth of his testimony are tested[.]" <u>Kentucky v. Stincer</u>, 482 U.S. 730, 736 (1987). What is more, the ALJ explained the process in an oblique manner that suggested no opportunity for Plaintiff to question the VE about his testimony. Specifically, the ALJ stated that first he would "get some testimony" from the VE, and then "[he]'ll give him a couple hypothetical questions, and then we'll talk about where we go from here." In short, the ALJ's misleading description not only the role of the VE but the part of the hearing in which the VE offered testimony had the effect of obfuscating the fact that Plaintiff had a right to challenge the VE's testimony. The ALJ thereby abridged Plaintiff's due process right to a fair hearing.

The Court cannot say that this error was harmless, since the ALJ ultimately relied on the VE's unchallenged testimony to find Plaintiff not disabled, and no hypotheticals that included Plaintiff's self-described limitations were posed to the VE. Plaintiff testified to restrictions on lifting and sitting that, if credited, would erode the occupational base of sedentary work. In particular, Plaintiff described requiring an option to alternate sitting and standing. Social Security Ruling ("SSR") 83-12, 1983 WL 31253 (S.S.A. 1983) states in pertinent part that

> [i]n some disability claims, the medical facts lead to an assessment of RFC which is compatible with the

> performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work . . . or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)

SSR 83-12, 1983 WL 31253, at *4. SSR 83-12 goes on to note that "[u]nskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will." 1983 WL 31253, at *4.

Additionally, TITLES II & XVI: DETERMINING CAPABILITY TO DO OTHER WORK-IMPLICATIONS OF A RESIDUAL FUNCTIONAL CAPACITY FOR LESS THAN A FULL RANGE OF SEDENTARY WORK, SSR 96-9P, 1996 WL 374185 (S.S.A. July 2, 1996), provides that where an individual's need to alternate sitting and standing periodically "cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand." Id. at *7. In such circumstances, SSR 96-9p recommends "consult[ing] a vocational resource in order to determine whether the individual is able to make an adjustment to other work[.]" Id.

Thus, if the ALJ credited Plaintiff's testimony that she must alternate sitting and standing, he would need to obtain further

testimony from a vocational expert to determine the extent to which the occupational base of sedentary, unskilled work is eroded. The Court therefore cannot deem the procedural error harmless.

### B. Failure to Request Clarification Regarding Consultative Physician's Opinions (Pl's Br., Point I, pp. 22-23)

Plaintiff argues that the ALJ was under an obligation to request clarification from consultative physician Dr. Marisela Gomez. Dr. Gomez opined that Plaintiff "should avoid" activities requiring "mild or greater exertion" and she that she had "mild" limitations for walking, standing long periods, bending, and climbing. (T.232). Specifically, Plaintiff contends that the ALJ was required to recontact Dr. Gomez to ask her to explain what she meant by recommending that Plaintiff "should avoid" activities involving "mild or greater exertion." Dr. Gomez's recommendation that Plaintiff "should avoid" activities involving "mild or greater exertion" is arguably inconsistent with her statement that Plaintiff only has "mild" limitations in walking, standing long periods of time, bending, and climbing. In any event, it is at the very least ambiguous, and clarification is required.

### C. Plaintiff's Other Contentions

Having found two separate grounds on which to reverse the Commissioner's decision, the Court need not reach Plaintiff's other contentions.

## VI. Conclusion

For the foregoing reasons, the Court finds that Plaintiff was prejudiced at the hearing because the ALJ did not fulfill his

special obligation to Plaintiff, who was pro se at the time, to adequately inform her of her right to cross-examine witnesses. In addition, the Court finds that the consultative physician's report contains an ambiguity that, on remand, the Commissioner should take the opportunity to clarify. Accordingly, Defendant's motion for judgment on the pleadings is denied, and Plaintiff's motion for judgment on the pleadings is granted to the extent that the Commissioner's decision is reversed, and the matter is remanded for a new hearing and clarification of the consultative physician's opinion.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

HON. MICHAEL A. TELESCA
United States District Judge

Dated: December 11, 2017
Rochester, New York.